MANUFACTURERS' FINANCE COMPANY *vs.* ROBERT R. ROCKWELL.

Suffolk.    November 10, 1931. — March 18, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Guaranty*, Revocation, Construction.    *Surety*.

The president of a corporation executed a guaranty of the performance by the corporation of a contract in writing between it and a second corporation.    The guaranty was attached to the contract.    At its top in large letters was the following: "THE FOLLOWING GUARANTY AND WAIVER IS TO BE SIGNED BY INDIVIDUALS"; and it contained a provision that "the liability hereunder is and shall be direct and in all respects unconditional, and shall continue until said . . . [second corporation] receives written notice revoking said liability as to future transactions."    The president ceased to hold office in his corporation, disposed of all stock which he held in it and ceased all connection with it, and thereafter wrote to the second corporation: "Effective this date my resignation as president and a director of the . . . [first corporation] has been accepted and I have severed all connection and interests in that company."    *Held*, that such letter was not a sufficient notice to terminate liability of the guarantor under the guaranty.

Testimony by the secretary of the second corporation at a trial of an action to enforce the guaranty above described that if he had received such a letter he should have thought the writer "wanted . . . to get out" of his future liability, and would have replied that the plaintiff "insisted on his staying on," far from showing that the notice was sufficient, emphasized its insufficiency.

The guarantor above described read both the contract between the corporations and the guaranty and then signed the guaranty.    The contract contained a provision that the second corporation might "from time to time add to, alter, cancel or in any manner change any of the agreements, terms, provisions, and conditions of these articles" and that the changes "shall become and be fully binding on first party [the first corporation], all guarantors of these articles and all sureties upon all bonds given to secure the performance of these articles, without any other or further notice to any person or persons whatsoever."    The contract of guaranty warranted performance of the terms contained in the original agreement or "in any changes thereof," and provided that the failures of the second corporation "to exercise any rights or remedies it or they may have against the first parties *or others*, shall in no wise impair this obligation and that the liability hereunder is and shall be direct and in all respects unconditional

. . ."; and that the parties "waive all notice of acceptance of this guarantee by . . . [the second corporation], its successors and assigns and waive all other notices to which they might otherwise be entitled." *Held*, that

(1) The defendant had agreed to changes without notice in the original contract and that failure by the second corporation to exercise rights or remedies should not affect his liability;

(2) In the circumstances, the defendant's liability was not affected by the fact that the second corporation, without notice to him, had entered into another contract which gave the first corporation further time for performance.

CONTRACT upon a guaranty dated September 23, 1925, by the defendant and another to the plaintiff, party of the first part, of "the full, prompt and faithful payment, performance and discharge by THE ROCKWELL LUMBER Co., Cleveland, Ohio, first party in said agreement, of each and every of the agreements, warranties, terms, provisions and conditions set forth in . . . [a certain] agreement [in writing dated September 23, 1925, to which it was attached] or in any changes thereof or in any rider or riders to be thereto attached, or in any other instrument or instruments given or executed in pursuance thereof, provided to be done, paid or discharged by the first party in manner and form therein as provided." Writ dated May 1, 1929.

In the Superior Court, the action was tried before *Pinanski*, J. Material evidence and rulings by the trial judge are described in the opinion. A verdict in the sum of $62,235.30 was returned by order of the judge. The defendant alleged exceptions.

*E. C. Park*, for the defendant.

*H. J. Barrett*, (*J. A. Lyons* with him,) for the plaintiff.

WAIT, J. This is an action on a guaranty. The contract guaranteed was executed by the Rockwell Lumber Company of Cleveland, Ohio, and the plaintiff. The guaranty was executed on the same date by the defendant, then the president of the lumber company, and by one McIntyre, then its treasurer, as guarantors.

There is no dispute that there has been a breach of the contract between the plaintiff and the Rockwell Lumber Company; and that, if liability exists, the amount due is

$62,235.30 with interest. The questions requiring our decision are whether the liability of the defendant terminated with the receipt by the plaintiff of a letter which the jury found was mailed by the defendant on August 3, 1927, and received by the plaintiff shortly thereafter; and whether, as a guarantor, the defendant was released in consequence of the execution of a contract by the plaintiff, between itself, the Rockwell Lumber Company, McIntyre and his wife on April 28, 1928.

The contract of guaranty provided that "the liability hereunder is and shall be direct and in all respects unconditional, and shall continue until said Manufacturers' Finance Company receives written notice revoking said liability as to future transactions." It was a binding contract upon a present consideration, and could be terminated only upon compliance with its terms. *Zimetbaum* v. *Berenson*, 267 Mass. 250, 254. The defendant resigned as an officer of the Rockwell Lumber Company on August 3, 1927, and disposed of all the stock which he held in it. Since then he has not been connected with it. At that time, he wrote to the plaintiff: "Effective this date my resignation as president and a director of the Rockwell Lumber Company has been accepted and I have severed all connection and interests in that company." This is the revocation relied upon. In the opinion of a majority of the court it is not a sufficient notice to terminate his liability. Assuming, what the plaintiff denies, that such a letter was received, it does not state the intention no longer to be liable for future transactions under the contract guaranteed with sufficient distinctness to affect the plaintiff with the notice to which it was entitled. For all that was stated, he might still be understood to be bound by his guaranty. Liability as guarantor was not conditioned by a status as office holder, stockholder, or employee of the lumber company. This status is all that the letter dealt with. There was nothing set out incompatible with a continued liability as guarantor of the company's performance of its contract with the plaintiff. The written contract of guaranty bore at its head in large letters: "THE

FOLLOWING GUARANTY AND WAIVER IS TO BE SIGNED BY INDIVIDUALS." It made clear the relation assumed did not depend upon corporate interest.

The testimony of the plaintiff's secretary that if he had received such a letter he should have thought the writer "wanted . . . to get out" of his future liability, and would have replied that the plaintiff "insisted on his staying on," far from showing that the notice was sufficient, emphasized its insufficiency. The plaintiff was helpless against a proper notice. It could not legally reject a sufficient notice and deprive the defendant of his contract right to put an end to liability for future transactions. See *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41. *William Filene's Sons Co.* v. *Lothrop*, 243 Mass. 214.

The contract of April 28, 1928, dealt with a situation which arose after the defendant left the lumber company, and of which he had no full knowledge till shortly before the trial. In violation of the contract of September 23, 1925, certain things took place, which exposed McIntyre to prosecution. By the provisions of the April contract the plaintiff agreed among other things, on certain conditions, so long as the parties other than the plaintiff performed the agreements and promises of that contract that "it will not resort to legal action against said 'Lumber Company', to enforce its said claims against it." The lumber company agreed to discharge all its indebtedness to the plaintiff on or before July 1, 1930. In substance the time for performance of some of its obligations was extended as a result. There was a failure to exercise a right which the plaintiff possessed.

It is familiar law that a creditor, who gives further time to a debtor, releases sureties of the contract so extended unless the surety assents to the extension of time or the creditor reserves his right against the surety. See *Lascelles* v. *Clark*, 204 Mass. 362, 373; *Bishop* v. *Eaton*, 161 Mass. 496, 501; *Kenworthy* v. *Sawyer*, 125 Mass. 28, 30; *Schwartz* v. *American Surety Co. of New York*, 231 Mass. 490, 493.

No reservation of rights against the defendant as guarantor was made in the contract of April, 1928. The defendant

knew nothing of the transaction. Nevertheless we think he must be held to have assented to it. By the eleventh article of the contract of September, 1925, it was agreed that the plaintiff might "from time to time add to, alter, cancel or in any manner change any of the agreements, terms, provisions, and conditions of these articles" and that the changes "shall become and be fully binding on first party [the lumber company], all guarantors of these articles and all sureties upon all bonds given to secure the performance of these articles, without any other or further notice to any person or persons whatsoever." The contract of guaranty warranted performance of the terms contained in the original agreement or "in any changes thereof," and provided that the failures of the plaintiff "to exercise any rights or remedies it or they may have against the first parties or others, shall in no wise impair this obligation and that the liability hereunder is and shall be direct and in all respects unconditional . . ."; and that the parties "waive all notice of acceptance of this guarantee by Manufacturers' Finance Company, its successors and assigns and waive all other notices to which they might otherwise be entitled." The defendant read these instruments and signed one of them. He thus agreed to changes without notice, and that failure to exercise rights or remedies should not affect his liability. The provision in the eleventh article that changes by the plaintiff could be made by notice by registered mail which should be effective if no dissent was made by the lumber company in writing within five days after receipt of the notice of change, is not exclusive of other methods of change agreed to by the lumber company. It was a method in favor of the plaintiff which could be waived without prejudice to its rights.

The order directing a verdict for the plaintiff was proper. There was no contention at the trial that the defendant was not liable, if, as matter of law, the evidence failed to sustain findings of a valid notice to terminate liability or of an extension of time of payment which released him. Neither of the defences could be sustained on the evidence. As matter of law, liability in the amount agreed was established.

There was nothing for the jury upon the material issue. A verdict for the defendant could not be ordered.

We have discussed the exceptions that have been argued. All else is treated as waived under the familiar rule. In the opinion of a majority of the court the order must be

*Exceptions overruled.*