**Robert ROSENTHAL, Theodore Rosenthal, Arlyne R. Sacks and Federal Trust Company, Co-Trustees**

v.

**Allin M. MEANS and Clyde L. McCoy.**

Supreme Judicial Court of Maine.

July 12, 1978.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier, Waterville (orally), for plaintiffs.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by Malcolm L. Lyons (orally), Warren E. Winslow, Jr., Augusta, for defendants.

Before WERNICK, ARCHIBALD and DELAHANTY, JJ., and DUFRESNE, A. R. J.

DELAHANTY, Justice.

Seeking to enforce the terms of a guarantee agreement, the plaintiffs, co-trustees of the Rosenthal Family Trust (co-trustees), brought this suit against the defendants, guarantors. From an order of the Kennebec County Superior Court granting summary judgment to the plaintiffs for $47,-702.37, as mortgage payments and costs of the foreclosure proceeding, and $3,000.00, as reasonable attorney's fees, the defendants have appealed. We deny the appeal.

The facts underlying the rather complicated financial transaction involved in the instant lawsuit are not in dispute. The co-trustees were the owners in fee simple of certain real estate in Waterville, Maine which they leased to Motor Inn of Waterville, Maine, Inc. (Motor Inn), (formerly Holiday Inn of Waterville, Maine, Inc.). Under the terms of the lease, the plaintiffs agreed to subordinate their fee interest in the leased premises to successive real estate and chattel mortgages in an amount determined in accordance with a fixed formula contained in the lease. Motor Inn subsequently negotiated a loan with Memphis Bank and Trust Company of Memphis, Tennessee (Memphis Bank) for $191,707.80 which was reflected by two notes. The first note was secured by a second real estate mortgage executed by the co-trustees in the amount of $106,000.00 computed pursuant to the lease's formula and upon which Motor Inn was the obligor. The second note was secured by a first lien upon all of the furniture, fixtures, and equipment owned by Motor Inn and used in connection with the leased premises.

As consideration for the real estate mortgage given by the co-trustees, the defendants executed a guarantee agreement in which they jointly and severally guaranteed inter alia that in the event of a default by Motor Inn they would reimburse the plaintiffs for any amount over $106,000.00 that the co-trustees paid to procure a release of the mortgage and security interest held by Memphis Bank.

Memphis Bank subsequently notified the co-trustees that Motor Inn had defaulted on both notes and still owed approximately $150,000.00. Kennebec Apartments, Inc. (Kennebec), on behalf of the co-trustees, paid the outstanding balance on both notes and received an assignment of the real estate mortgage and security instrument. The co-trustees' suit upon the guarantee agreement ended in summary judgment for the plaintiffs, the Superior Court finding that all conditions precedent to the defendants' liability had occurred.

On appeal, the defendants assert that their motion for summary judgment should have been granted or in the alternative that there were material issues of fact in dispute which should have precluded summary judgment for the plaintiffs. In particular, the guarantors focus on language in the guarantee agreement alleging that there was no evidence either that the co-trustees were "called upon" to pay the balance due on the notes or that the co-trustees procured an assignment and a release to themselves of the mortgage and security instrument.

We disagree.

██ Since a guarantee is a type of contract, this Court has long held that "[it] is committed to the view that guaranties are governed by the same rules of construction as other contracts . . . ." Clark v. Anderson, 123 Me. 165, 167, 122 A. 337

(1923). In construing a contract, the entire document should be considered to determine the meaning and effect of each part. *See Forbes v. Wells Beach Casino, Inc.*, Me., 307 A.2d 210 (1973). Moreover, all writings that form part of, or pertain to, the same transaction should be read together even though the writings are not all between the same parties. 3 A. Corbin, Contracts § 549 (1960); *cf. Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261 (2d Cir. 1965).

■ Applying the above-mentioned principles, it becomes evident that for the co-trustees to be "called upon" does not mean, as defendants urge, that the plaintiffs must have been *required* to pay the balance due on the notes. As the mortgage quite explicitly states, the co-trustees were never obligated on either of the two notes but had the option of paying them off to fully protect their own fee interest in the premises.

> Nothing, however, herein set forth shall bind or obligate the [co-trustees] to the payment of the promissory note herein referred to, or any future notes given by [Motor Inn] under the security of this mortgage, nor to the payment of any other obligations contained herein. The [co-trustees] may, however, but without obligation, satisfy any and all conditions in this mortgage in order to prevent foreclosure.

Reiterating this aspect of the mortgage, the guarantee agreement recites:

> [U]nder the terms of the proposed mortgage subordination to be given by the Co-trustees to the Memphis Bank and Trust Company, the Co-trustees have the option, on default of the said M[otor] I[nn], to make payments to the said bank to cure such default . . . . .

Within the context of the overall guarantee agreement and the accompanying mortgage, the language "called upon" clearly refers to the option of the co-trustees and not to their obligation to pay off both notes upon default of the principal.

■ The guarantors assert that even if "called upon" refers to an option, the choice belonged to the *co-trustees* and not to a third party. Here, however, the defendants allege that Kennebec, as a third party, paid the balance due on the notes and received an assignment of the mortgage and security instrument.

The defendants evidently misconceive the nature and consequences of the transaction between the co-trustees, Kennebec, and Memphis Bank. It is made clear in an affidavit of one of the trustees, who was president of Kennebec, that the stock of Kennebec was wholly owned by members of the Rosenthal Family Trust. Kennebec paid the outstanding balance not as a plain volunteer but on behalf of the co-trustees. Payments made by Kennebec constituted a loan to the Family Trust which was repaid as an offset against rentals due from Kennebec to the co-trustees. In effect, the co-trustees did make payment and procure an assignment by Memphis Bank albeit through a wholly owned corporation. Such a procedure was not inconsistent with the terms of the guarantee agreement.

Having clearly established that all conditions precedent to the defendants' liability had occurred, we are satisfied that the plaintiffs' motion for summary judgment was properly granted.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and POMEROY, GODFREY and NICHOLS, JJ., did not sit.